Good morning. May it please the Court. The claimed invention provided a new manner of emulating streaming, which improved over the prior art version of pipelining. Specifically, the prior art or conventional option for pipelining, as described in the PAH reference, used dynamic interaction between a remote server and a player in real time. The present invention avoided the need for that dynamic interaction by providing a unique control information file. Now, Google's arguments below in the petition was that it would take a smile file and modify the same to implement the invention. However, it was established that a smile file could not implement pipelining of any form, and Google's own expert agreed. Moreover, it was established that Qua's dynamic technique would not use control information files at all, and was to the heart of the problem. The Board ultimately sidestepped these deficiencies by relying explicitly and repeatedly on the patentee's own disclosure as a solution for these problems. This was done in lieu of modifying Smile and in lieu of combining Qua, and that constitutes a legal error. I'm just to be clear, okay? The Board had two alternative holdings, one in which it said, which was a combination of Smile and Qua, and the second was more or less what the petitioner was saying, was Smile and general knowledge as indicated in Qua, right? Correct, Your Honor. So, the arguments you've made go more to the first or the second? They go to both, Your Honor. If you read the description in the final written decision as to the first, what they're saying is we're combining, we're not even combining anything. We're having Smile sit out there on its own because it can't do everything that's required of the invention, and then we're doing what's actually described in the specification. Now with respect to the combination of Smile and Qua, there was no argument below that Smile and Qua would be combined, specifically the conventional pipelining in Qua. Qua's conventional pipelining was this very thing that the patent said it was overcoming. It's this dynamic interaction, and in that interaction, there is no control information file because the segments are created in real time, and there are no alternatives for a given segment because if you're customizing your division of media, you don't need to have an alternative. You're basically making a custom tailored item as opposed to what the invention is, which is basically an off-the-rack solution saying, do you want a small, do you want a medium, do you want a large? Now what the board said, sort of in one or two sentences in the ground that it created, was that you would use the pipelining in Qua. But if you're using that pipeline, the question is how are you combining it if that version of pipelining in the prior art didn't use control information files and didn't use alternatives and used explicitly what the patent was intending to overcome? And Google seems to admit as much in its arguments on appeal concerning the deficiencies of the board. Specifically, in the red brief at 39, it said there's no need to demonstrate the obviousness of any such combination. And also in the same page, it said there was no need therefore to show how Qua's specific approach for dividing media files into segments would be implemented in SMILE. Basically, both the board and Google seem to be avoiding the fact that there is no articulation of how you would combine Qua's technique with SMILE. And in fact, what the board wants to do is just keep this all separate. This can be seen specifically in the language that the board uses. And I'm looking at the appendix at 23. In particular, a media presentation could have been divided into a sequence of segments and then- Sorry, where were you reading on 23? The- On the second, first full paragraph, second sentence? Correct. Okay. In particular, a media presentation could have been divided into a sequence of segments and then played back in sequence using the seq element of SMILE. There's no dispute that a SMILE file will tell you when and how to play something, but it simply doesn't have a control information file or suggest or provide the functionality for control information file that controls downloading or the timing of downloading relative to play. So what's the board's solution? Further, during playback of one segment of the media presentation, another segment could have been downloaded simultaneously using well-known multi-thread software development tools. That discussion of multi-thread software development tools is the explanation for how to implement the invention and the specification. That site in there, both the site to the patent and the site to the declaration, are sites to our own disclosure. Basically, the Bolterman site that the board relies on, if you go there, it cites back to our patent. So the board repeatedly, four times, cites to our patent for this, and then five times cites to the Bolterman declaration where the cited paragraph refers back to our specification. So what the board seems to be saying is this. We have SMILE, but it can't do the invention, and it doesn't have the functionality, and we're not going to modify it. So we'll just play files using SMILE. How are we going to get to a control information file of the present invention? We'll just do what's said in the specification. But there's two problems for that. What's described in the specification is a way to implement, and they shouldn't be relying on our specification at all to inform the prior art. Second, what's described with respect to those multi-threading techniques are simply that the Java language exists or the Microsoft SDK language exists, and then those things can do two functions at once. They can multi-thread. They can do one thing and in parallel do something else. The patent doesn't... You're suggesting the board can't rely on your spec, but what about when you say things like at column three, line 62 of the spec, combining multiple sequenced inputs is well understood in the industry? I'm sorry, what specific line? Column three? Line 62. When you say something is well understood in the industry, can't the board rely on something like that in your spec? We have to understand what that's describing. Java says you can do multiple sequences at once. Just because there is a computer language that says you can do two things at once does not suggest what the two things you're going to do at once are. No, that's not right. What it says here is combining multiple sequenced inputs is well understood in the art industry for example, and then it goes into the Java example. So the preceding sentence is obviously much broader in nature than just the Java example. I'm sorry, are you suggesting that the sequenced was to your suggestion that the board couldn't cite anything in the spec and use it, and I think this is an example of something that was fair game for the board to use when you're discussing what exists in the art. And what the specification I believe is saying, even with requests to sequenced elements, it's not saying what things are being sequenced. Java existed and can do sequences in a row. It can do multiple things at the same time. But just because a programming language exists that can do sequences in a row doesn't mean it specifically teaches a control information file that does the specific sequences and the specific things that we recite in the claim intervention. And I want to make sure that's clear. Basically we need to provide in our specification some indication of how this can be implemented. There has to be enablement. And all this is explaining is that the Java language allows you to do different sequences. It allows you to put things together in a certain way. But just because the Java language exists to do so does not suggest a control information file that does the specific things recited concerning segments, concerning alternatives, and concerning the relative timing of... Let's look at claim one and why don't you tell me what the specific sequencing things are that you're referring to that wouldn't be captured by your general statement that combining multiple sequencing inputs is well understood. Well, what it says there is that there is a control information file. Claim one. Tell me what you want me to look at in claim one. Sure. The third element, the client device parsing the control information file and based on parsing the control information. How is it the third element? Isn't that the second element? I wasn't counting the preamble. I'm sorry. You weren't counting what? The preamble. So downloading and then after that... You weren't counting the preamble? Ah. So it's a preamble and then two elements of that, I guess. So it's the third element. The second element, not the third. The client device parsing. The client device parsing the control information file and based on the parsing the control information file doing a number of things. Identifying multiple alternative files. There's nothing with respect to our discussion in Java of identifying multiple alternative files or saying that Java teaches to download one at a specific time relative to downloading another and to play one at a specific time relative to playing another. That's what's recited in the rest of this and what you do is parse the control information. I'm sorry. In the rest of this what? In the other limitations three, four, and five? Correct. Determining which of the multiple alternative files to retrieve. Yes. Based on system restraints. Retrieving the determined file of the multiple ones. Begin a media presentation and then going on with concurrent, the second to the last element, concurrent with the media presentation retrieving a next file. But just because you can retrieve multiple things at the same time doesn't mean that Java teaches or suggests that you are doing the specific retrieving of this media segment, which is a division or alternative of something else, and downloading relative to play. It's just saying that the Java language can be used to implement that. But Java itself doesn't describe all of these features. Java is just one programming language that can be used to program these elements. I'm not sure if I'm making myself clear if there's another question in that regard, but I want to make sure we're clear on that. Because what the board is saying is or seems to be saying is that you have Smile over here and you're not going to modify Smile and instead you're going to use Java. If that's the case, where does the control information file exist? Is it in the Smile language? Is it in Java? What the claim requires is the specific use of a control information file. And the board's not modifying Smile and it's using the discussion of Java for our specification. Where do we actually get the claimed control information file? As stated in KSR, the simultaneous download, excuse me, a patent is not proved obvious merely by demonstrating that each element was independently known in the prior art. What the board seems to be saying here is Smile existed and had some of it. And our patent discusses Java and that could do other things. And therefore, since these two things exist in the prior art, Java existed and Smile existed, let's just call it close enough. But what you actually have to get to is a reason to modify or combine to get to the claimed control information file. And if Smile's not being modified, what is? Where does that control information file exist? It's not clear either from the petition or from the board's final written decision where that exists. And absent a showing on that and absent some reasoning in that regard, there simply isn't a proper basis for obviousness. You're into your rebuttal. I'll say the rebuttal. Thank you. Your Honor, may it please the court. I think I'd like to begin, unless the court would like to direct me somewhere else, by trying to clarify here just what the board found. And this is a substantial evidence review case, of course. And what the board found was taught in the Smile reference itself versus what needed to be supplied. This whole discussion of control information files, the board found expressly to have been taught in the Smile reference. That's at appendix 15 and 16. You know, we ticked through how the board had made findings on steps one through five, method steps one through five in the Smile reference itself in our red brief. I had understood the dispute here to be about where there would be a teaching of step six, concurrent with the media presentation retrieving a next file. That is the one and only step in this claim that the board found not to have been taught in Smile, the reference itself, and therefore looked to other teachings in the art. The way it looked to other teachings in the art wasn't perfectly appropriate. It found, based on both the testimony of Dr. Bolterman and the Hua reference, that there would have been a motivation. The concept here is very simple. It's simply, while you're starting to play one portion of a media presentation, downloading the next present section. That concurrent with the media presentation retrieving the next file, Hua taught was conventional, and Hua taught a motivation. Are you now attempting to defend the board's decision to, and I'll make it really clear to Telegraph, this is a hostile question, go off the rails and exercise its own discretion to come up with a combination that's not in the petition? Is that what you're defending now? I'm not, I mean, I would say that that was perfectly appropriate to do, but that is not the thrust of my question. Let me just be clear. So on page 485, which is the institution decision, when the board says we exercise our discretion and institute an IPR on an additional ground, that would be the combination of Smile and Hua, correct? That is the combination of Smile and Hua. Okay, so that is not a combination that is one of the two that you argued for in the petition? Well, I would argue, Your Honor, that it is, in fact, the same arguments and the same evidence. Except it's not, because you didn't. You have petition number one, anticipation in light of Smile, number two, obvious in light of Smile. And the board itself actually found this was an additional ground, didn't it? The board was clarifying what it understood the petition to have argued. Because I see here, nonetheless, for clarity, we exercise our discretion and institute an IPR on the additional ground. You don't think that I should interpret that as the board deciding it was going to add its own ground to the petition? If Your Honor does. And I do. Okay. And I think it's really unreasonable for you to argue otherwise. Well, and I'm not arguing that that is not denominated as a separate ground. The decision of the board on the first ground, though, was based on the same arguments and evidence, and it's supported by substantial evidence. Stop. So are you defending the idea that the board has the discretion to institute an IPR on a ground of its own choosing? I am defending the notion that... It's a yes or no question. Are you arguing to me that the board has the discretion to institute an IPR on the ground of its own choosing? In this case, on these facts, yes. But if Your Honor disagrees, I'd like to address how HWAA relates to the first ground. Okay. But you think yes. So you think SAS doesn't prevent you, doesn't prevent the director from exercising his discretion to come up with his own ground in the institution decision? I do think SAS goes to a different question, which is partial institutions. But I'm not asking you whether SAS goes to a different question. I'm asking you whether SAS prevents it. Do you think the 17... And yes, there are 17, because I counted them, statements in SAS, which indicate that the director does not have exactly this sort of discretion. You think I should construe all of those as dicta and that we, the Federal Circuit, are so well positioned vis-a-vis the Supreme Court that I should disregard all of them? I'm not asking you to disregard anything in SAS, Your Honor. And if I may, let me explain why the decision below should be affirmed, even if Your Honor thinks that second ground is entirely altruistic. Well, it's not whether I do. I want to understand what you're arguing about it, because I understood your brief to largely dodge it for, I think, the obvious reason that it was a pretty messed up thing for the director to do after SAS. But I do have a sense that your brief attempted to nonetheless defend it. Our brief did defend it, because here what the board was doing was simply clarifying for Phillips' own benefit that it wanted to hear about Hua. But let me address the first ground, because I do think that the facts here... Just so I'll be clear, when you say first ground, there were two alternatives. Sorry, the first obviousness ground. The one that you put forward, which was obviousness, single prior art, but in light of general knowledge, which included and you referenced Hua. Correct. That's the ground to which I'm referring. Okay. And this... Just to follow up on what Judge Moore was saying, it's never been clear to me exactly when the board decides to intervene and when it doesn't intervene. But if this case should stand for the principle that the board thinks that it has discretion to come add a new ground in the petition, did the board ever think about... Do you know? I mean, they're not here to intervene. I'm aware of no effort by the board to intervene or to defend that. But I would submit here that it doesn't affect this court's disposition of the case for the simple reason that here, the board found obviousness on the ground that I think everyone would agree is an appropriate ground, which is Hua, excuse me, which is smile in light of the general knowledge of the posa. The board at that very same passage that Judge Moore pointed to at Appendix 485, cited two cases for the proposition that it is perfectly appropriate to consider the general knowledge as reflected in other teachings of the art, the Randall case and the Ariosa case. And they both stand for the proposition that the board not only may, but must consider references like Hua that are not denominated as being part of a ground, but are cited in the petition, are backed by evidence and argument in the petition, and explain why a limitation of the claim here, the concurrent downloading and playback limitation would have been met in the art. That finding on that ground that is not the ground that is subject to Judge Moore's question is a finding that's supported by substantial evidence and demonstrates the obviousness of this claim. Well, so I guess my concern is I agree that there has to exist the ability to have single reference obviousness. Of course, there has to exist it. So single reference obviousness necessarily means something is missing from the claim. And that you have to look somewhere else to get it. So of course, the place you should look is general knowledge. Would everyone know this is just an extension of what we've already been doing? But what this case feels more like to me is two reference obviousness, which I've made clear to you I think inappropriate because you didn't ask for it in the petition. But that's what I feel like it is. And I feel like somehow you're trying to avoid having to prove, A, motivation to combine Hua and Smile, because what you're doing is you're looking to Hua, fourth missing element. But you're saying, but we're not really looking to Hua for the missing element. We're just saying Hua is an example of the fact that that missing element is a thing people generally skilled in the art would know about. And so I feel like you're backdooring. You're trying to get around having to prove a real obviousness case based on two references by saying, we're really gonna look to the one reference to fill in really the general knowledge of a skilled artisan. We're not really using that reference. Your Honor, I would disagree with the characterization because I think what we're getting at here is that you don't need to just look at Hua. You could look to any number of references. The notion of downloading the next segment of a file while you're playing with Hua. But the PTO didn't say that, did it? The PTO hold that any number of references disclose this, and that's why it's part of the general knowledge? It found that this was part of the general knowledge, and Hua itself stated that it was part of the general knowledge. This wasn't a new invention of Hua. Actually, Hua didn't say general knowledge. Don't misstate things. Be precise. Hua said conventional. But don't misstate things. Know your references. Apologies, Your Honor. It stated that it was part of, it was certainly characterized as a conventional technique in Hua. And Hua said, Hua provided a motivation, which we cited and the board cited. Why didn't you? You were counsel below. Why didn't you, in your petition, argue Smile and Hua? I think, I don't know that I have an answer to why I didn't, other than to say, number one, we think it's anticipated for the reasons we articulated. We obviously did not prevail on that ground. But secondly, because under the Ariosa case and under the Randall case, I don't think it matters. The question is, did we prove in our petition that the person of ordinary skill in the art reading Smile, implementing a Smile player, using the knowledge that the POSA would bring to bear, would that POSA be motivated? You weren't trying to combine anything that's the invention or whatever. I mean, Hua is this article. But you weren't trying to use the other stuff in Hua. Correct, Your Honor. So that would have been more of a combination if you were trying to use the other. I mean, Hua articles about all this new stuff, they've come up with. That's exactly right. Their reference to the other stuff is just in terms of what the background. In fact, they criticize the inadequacy of conventional pipelining, which was kind of one of their points, right? Well, Hua develops this two-phase- Couldn't that possibly have been exactly the reason you didn't want to make the two-reference obviousness? Because if you do, you've got a proven motivation to combine. And Hua actually criticizes the very thing you want to extract out of it and say would have been used in this case. No, Your Honor, because Hua makes clear that if you do this two-phase service model, that is what the bulk of Hua is about, you can do fast-forwarding, you can do rewinding. There's no requirement in the law that in order for a combination to be obvious, it should be advantageous for all the reasons- Here's my problem. Our Arendi case says that when you look to the general knowledge, you can do so when you're just talking about an extension of what is claimed in a single-reference obviousness. But it should be much narrower when you're trying to fill in a missing limitation, which is what we have here. And so when you're trying to fill in a missing limitation, I find it troubling that you would look to a reference which in fact discourages pipelining to say they would use pipelining. If I may, Your Honor, let me address the Arendi point and then the discouragement point. On the Arendi point, Arendi is about the situation where an expert say-so is unsubstantiated. That's what Arendi discusses. Here it is substantiated. It's substantiated by Hua. This is one of these things. You want to limit SAS to only a single sentence related to its express holding and not look at the 17 other sentences where the Supreme Court says the director has no discretion. Likewise, you want to look at Arendi and say it's limited to this. Arendi actually very methodically goes through four separate things that you need to think about if you're going to go to the common knowledge, one of which is how significant the limitation is. All these different things. I would differentiate, Your Honor, between common sense as in Arendi and the general knowledge that the POSA would have that is substantiated by prior art here, Hua, which says this is part of the conventional knowledge. There's no issue of whether the prior art in fact teaches that downloading in parallel with playback would have been known. It says it's part of the conventional art, but it also says, but you shouldn't use it, and it goes through reasons of discouragement. Let me address that point. On that point, the fact that prior art may be undesirable for certain purposes taught in your reference is not a reason why it doesn't, that doesn't simply make it a teach away when those other reasons are found nowhere in the claim and have nothing to do with the claim. That's the Scorzi-DiMizu case, 870, Fed 3rd, 1376. The Hua reference provides advantages of using two-phase service, the two-phase service model, which, by the way, one absolutely could do in a Smile player. We just don't think you're obligated to do it in a Smile player. Then the point there is that the claims say nothing about the ability to fast forward or rewind, which is the advantage that Hua's more complicated technique provides. All the claims require is a player, which the board found is taught expressly in Smile, that when it is playing one segment, downloads the next segment concurrently. It's a very simple concept that Dr. Volterman testified and Hua states were within the conventional knowledge of someone of the art. The question is how you implement a Smile player. The obvious way to implement a Smile player to avoid long wait time or highly jittering pictures, to quote from Hua, is to implement this conventional pipelining, this simple step six. And we concede that that step six is not taught expressly in Smile, but we think it's an appropriate single reference, because the obvious way to implement a Smile player by a person of ordinary skill in the art, informed by the general knowledge that this is just the way things are typically done, and an advantageous way to do it, would be to use that. A person of ordinary skill in the art doesn't need to go the next step to judge a process point and use the two-phase service model, nor does the person of ordinary skill in the art need to use Hua's particular equations for optimizing how you divide up, and perhaps dynamically, perhaps statically, but optimally divide up the segments. All that the claims require, and therefore all that we need to establish was obvious, is that the person of, when a Smile player is playing, it would have been obvious to download the next segment while you're playing the first. And that not only was part of the general knowledge, it's something that our expert Dr. Baltimore testified was something that was in fact out there in existing players. That's in appendix 1418 and appendix 1317 to 1318. So the board's finding that the person of ordinary skill in the art would have been motivated to do that sort of playback concurrently with retrieving a file, the finding of motivation... What is the basis? Why would you be motivated to make that change? You'd be motivated to make that change to, and I resist the notion that it's a chain, one would be motivated to do that in a Smile player so that to minimize wait times for the exact reasons that Hua taught conventionally pipelining was used. To avoid having, making users tolerate either a long wait time or highly jittering pictures. That's at appendix 315 and Dr. Baltimore talked about it in appendix 199. So we have here an expert witness pointing to a concrete prior art reference, explaining why the person of ordinary skill in the art would have been motivated to supply a missing feature and then explaining that there would have been a reasonable expectation of success in doing so. There's a finding there too. Both of those findings are supported by substantial evidence and I would submit to you that the situation is nothing like Arendi where there was no such other reference and the question was lack of substantiation. Here that's substantiated by Hua and that's appropriate under Randall and Ariosa. Thank you. Thank you, your honor. I'd like to touch on a few points. I think the issue here is that Google wants to have its cake and eat it too. They want to rely on Hua but not have to explain how to combine Hua. And the reason for that and a reason I think is important to realize is that it's not only an issue of whether or not we're talking about the second part of Hua. The conventional pipelining in Hua is that complicated formula. My colleague tried to distinguish the two and say oh you're not going to use the complicated formula but if you look in Hua at the description of conventional pipelining it is that complicated formula and it is this dynamic operation. So is your view more that there was no motivation to combine the two or that the implementation was difficult if not impossible? Because that's what I heard you saying last time you were here. My position or our position is this there is no explanation of how those two would be combined and they're incompatible for certain ways. First staying with the Hua idea. Hua describes Let's talk about pipelining. You keep talking about Hua. The takeaway from Hua in terms of general knowledge was simply what people call conventional pipelining. The conventional pipelining is described there was that dynamic interaction. They are taking information on the fly. I forget the exact letters but they're taking information about the current download rate,  The reason they're doing that is it's a custom communication between a server and a player where the two are talking back and forth and say what's your playback rate? What's your download rate? And then dividing and segmenting on the fly based on that. Now that's conventional pipeline and that's what's described under the heading conventional pipeline. But the issue is this and this is why I think it's been avoided. If you're going to use what is described in Hua as conventional pipeline and it is this custom communication and custom segmentation based on this why would you ever have a control information file? A control information file tells you in advance what your segments are and what your alternatives are. As was testified by Dr. Porter in Hua's conventional pipeline there are no control information files because you don't know in advance what those segments are going to be and there are no alternatives because you are creating custom segments. You don't have to have an alternative if you're actually tailoring it to this specific exchange. So the question becomes if someone's going to use what's in Hua why would they ever use a control information file? Why would they ever use alternatives? The ideas are incompatible and that's the problem and that's what's been avoided here. The argument that was offered here today is that while there are other things out there that teach pipeline okay where are they in the record? The only reference in the record with respect to what conventional pipelining is is that complicated operation in Hua and what the argument was below and in the appeal briefs here is that we're not going to use that. We're going to use something else. But if the only reference for conventional pipelining is the thing that they don't want to combine and admit in their briefing that they're not going to combine specifically stating there was no need that therefore to show how Hua's specific approach for dividing media files into segments would be implemented in SMART. We're basically saying we're not going to use the complicated definition of conventional pipelining in Hua. We're going to use something else but we're not going to provide any other reference on that. So it's basically trying to say we gave you a reference but we're not using it and we're not combining it but we gave you a reference so Arundhati says it's okay. But if there isn't a way to combine there then there's simply a failure to provide a basis for obviousness and you can't do an end round around. Thank you. I thank both sides for taking some more that concludes our proceeding for this morning.